All right, we'll now have a final argument of the day on Grace International Assembly of God versus Gennaro Festa and Falcon Construction. Hopefully we have everybody here for that. Thank you. You may proceed. And that's Mr. Haskell. Yes, sir. And you've reserved one minute of rebuttal. Thank you, Your Honor. I represent the appellant, Grace International, and the central question before this court is whether the amended complaint plausibly alleges the continuity component of a pattern of racketeering. The lower court held that we had not shown either closed or open-ended continuity Actually, we showed both, although both. Although we needed to show either. I'd like to turn first to the money laundering issue. Although it is not necessary, this bolsters open and closed-ended continuity concepts. But I think it's important to discuss this first because the lower court basically dismissed this and ignored the pleadings. Money laundering, in this case, is based upon the generation of proceeds of wire fraud over a period of time and followed by which there was transactions in those proceeds that were designed in whole or in part to conceal the nature, location, ownership, and control of those proceeds. By virtue of that, there was a violation of 18 U.S.C. section 1956. Now, these funds were trust funds under State law. Article III of the lien law requires these funds to be held and used to pay suppliers and subcontractors. That didn't happen here. Mr. Festa, based on circumstantial evidence, clearly diverted these funds. Now, the lower court dismissed this for several reasons. One, the court said you have to plead with specificity. Well, money laundering is a Rule 8 claim, not Rule 9. It doesn't have to be pled with specificity. But how do we say that the purpose of these communications was to conceal the source of the funds? Isn't this just typical kind of contractor breaking a contract? Why is it money laundering when they're typical business communications? Well, you say typical business communications. I don't know if it is typical, Your Honor, to tell in a document that is sworn to that these subcontractors and material men are being paid and have, in fact, been paid. That's under oath. And there's 11 of these documents that went to my client, sworn to by Mr. Festa. I believe that's perjury. Purpose to conceal the funds? Absolutely. Oh. Because if these funds are trust funds, and I grant you they're not dedicated trust funds, they're not designed to be this is an amount, you have to pay it, but you can't use the money. Once you get it, you bill for it, you have to pay the subcontractor. That's clear. You hold it in trust. The transaction itself, by turning this money over to yourself or to a third person, that in and of itself alters the nature. It's a necessity. It's part of it. It's the same thing as if a spouse who gets racketeering money turns it over to his wife, which is one of the elements of the Steffensen case. It's certainly more significant than it is changing large bills, denominations to smaller ones. The act itself is designed certainly in part to conceal the nature. It changes the nature by virtue of no longer being in trust. It changes the location. It changes the ownership. Edward? Let's talk about continuity here. What is the prospect for continuity here? You seem to suggest in your brief that it's because the project is only 38 percent done that you've established the continuity requirement, but obviously that's not enough. Is there any other victim? Is there any reason to think that this is the way the racketeering enterprise is conducting its business with other projects and other customers? First of all, we know that the enterprise itself, Falcon, was formed based on a New York State website in 2012. So it wasn't in existence that long. Right. And we also know — What is alleged in the complaint to suggest that this — that there is some prospect of continued racketeering activity, continued criminal activity? Well, this was — there was a fortuitous interruption of the acts of racketeering. Now, the fact that there's a fortuitous interruption after the 29 months had gone by, under these — this Court's minimum rule, 2 years, is sufficient — I'm sorry, necessary. It's not sufficient. But 29 months have gone by, and it's fortuitously interrupted before half the project is finished. But basically you've got one victim, one perpetrator, one project. That's — I mean, how is that a racketeering operation? Well, in Cosmo's forms, this Court found that there was one victim. That was the party that overpaid bills. And there are a number of cases where there's an inherently terminal project, such as  The fact that there was one victim is, A, we believe not dispositive, but, B, not true. It isn't true, Your Honor. There were — there were six victims here. Who were the victims? Grace was one victim. The lower court, of course, said it was one, but there wasn't. Heritage, which was the — the lender, was a victim because Heritage lent money on the strengths of these documents that were going back and forth. So that's the second victim. The third victim was American Building Company. American Building Company was supposed to sell steel. Instead of selling the steel, what Vesta did was he pocketed that money, over $100,000. He didn't store the steel. We found out about that much later. But they were a victim, too, because they would have made a profit. I submit that the three subcontractors that we know of, they were all victims as well. Why? Because every single application and certification said that we, that Vesta signed, they've been paid. So the wire fraud was furthering that victimization as well. If we had known they weren't getting paid, we would have stopped the project. So you don't have one victim. You have — you basically have six victims. The lower court dismissed this. The lower court also, Your Honor, if you have — if you have money laundering — and, again, this is at the pleading stage — if you have money laundering, that's an inherently illegal activity. It is not like wire fraud. And as a result of that, it links the past to the future. You can assume that these acts are continuing. Here, Mr. Vesta engaged in perjury, which, of course — Any time you allege money laundering, we will assume that that's going to happen in the future? You think that's all you need to do to establish continuity is allege money laundering? No. I didn't just allege money laundering, Your Honor. It's part of several acts. But money laundering occurred here, but it has to be looked into context. But it is inherently illegal. There are cases that have held that money laundering is an inherently illegal activity. And as a result of that, that goes into the issue of whether there's continuity, whether there's a presumption of continuity. And, therefore, we believe that the allegation coupled with the other allegations — again, you have the nature of the predicate acts of wire fraud alone. These documents, these certifications and applications, each of them basically is based on a past history. This is how much you pay. This is the work we did. This is what has to be done in the future. The past is linked. It basically draws you out. So under H.G., the nature of the predicate acts brings you into the future. The money laundering is because of its nature. It's inherently illegal. And this Court has so held. I believe that in this case we have 13 acts, 13 acts of wire fraud and three of money laundering, minimum three. The Court, as I point out in my brief, this is — the money laundering aspect of this and certain other aspects of this is something that would not be within our knowledge. The knowledge of these acts would be within Mr. Festa's purview. He would know whether these events happened. And what he does, basically, he confirms in his — below in his affidavit for the lower court on page 10, paragraph 12, he said, I didn't get this money from Grace. How could I pay the subcontractors? That's in his affidavit before the lower court on page 10, paragraph 12. I didn't get the money. In his appellate brief, he says maybe the money was used for other contractors, other aspects of the project. Under the lien law, that is larceny. That's the nature — the lien law was designed to protect contractors. And I submit that by virtue of taking that out, it had to be a disguise, a change of the nature of the money, the proceeds. You've reserved one minute for rebuttal. Mr. Haskell, we'll now hear from Mr. Pandolfo. Yes, Your Honor. May it please the Court, Your Honor. My name is Gregory Pandolfo. I represent the appellees in this matter, Gennaro Festa and Falcon. Initially, I would like to apologize for my lateness this morning. I understand we were first on the calendar. I apologize to the Court. I apologize to Mr. Haskell as well. You know, the Court recognized immediately just in their colloquy with Mr. Haskell that, you know, my opening comment, which is this is one construction job with one plaintiff, with one defendant. You know, essentially, Mr. Festa and Falcon, general construction, are the same entity. You know, he's a sole shareholder, chief cook and bottle washer, so to speak. You know, it's a job that had a finite conclusion had he been permitted to finish the job. And by virtue of that, it simply does not fall, as Judge Feuerstein pointed out, doesn't fall under the category of a RICO, a civil RICO violation. She recognized it immediately in our conferences and certainly made that quite clear in her decision. Were the Court to open the door to a claim like the one presented before this Court, there would be a flood of litigation. You know, I could sue my contractor on my home renovation because maybe he misrepresented something to an out-of-state contractor or maybe the bank that was financing my home renovation was from out-of-state and there was a misrepresentation there. That would open the door to any garden variety type of construction project to be in federal court, not only utilizing the resources of the federal court in the case that should appropriately be in the state court, but also effectively piercing the corporate veil, which is certainly not a policy I think this Court is interested in following. Counsel initially filed a complaint after court conferences subsequently amended the complaint and in doing so essentially fragmented each requisition of money and each lien that came down on the job into and alleges them to be specific instances in an attempt to prove continuity. Again, this is, this attempt is illusory. It's, you know, still it's one plaintiff, one job site, one defendant. Nothing that the plaintiff can do with respect to revising the complaint is going to change that fact. The Court below did not reach the, they mentioned the issue of proximate cause, which the requirement of civil RICO is that the act that gives the federal court jurisdiction over this act, over this case, be the act that harmed the plaintiff. While the Court mentioned it, they never got to that issue because the finding of the continuity found that the plaintiff did not satisfy that element. But essentially here, the plaintiff was not damaged by these alleged improprieties on requisitions for money. The plaintiff was damaged because, for whatever reason, this job went bad. We don't know why the job went bad. I mean, Mr. Festa, for the purposes of this litigation, has played into the fact that, you know, the money was, or has not contested the fact the money has been misappropriated, but the reality is he intended to finish the job. He had the funds to finish the job, and the job could have easily been finished. There are multiple reasons, as is true in any construction contract of this scope, why a job may not be finished. And I've experienced that over my career over the last 25 years in representing contractors. Every case has a reason why a job is not finished. So I would submit to the Court that the proximate cause element, while not discussed by the lower court, is another reason why this Court should affirm the lower court's findings. With respect to continuity, open-ended versus close-ended, there's the Court was correct. The Court below is correct. There's no legitimate claim that this defendant either committed similar acts in the past. And, by the way, his affidavit also states that he's been in business doing this for 40 years. While Falcon admittedly, this corporation admittedly was a relatively new corporation, this individual has been in the construction business forever. There's no allegation that he previously committed any such acts. And any allegation that he's going to continue to commit such acts is purely speculative. And the Court appropriately found that issue. As the lower court pointed out, the pleadings require more than a sheer possibility that the defendant will act unlawfully in the future. And that's at page 8 of its decision. With respect to close-ended continuity, the Court properly found that there was no agency on the initial transaction, which essentially takes this project down from 29 months to, I believe, 18 months. The first action being that one of the contractors on Long Island ordered steel products from a supplier in Georgia. But that contractor was not affiliated with my client in any way whatsoever. So the actual requisition process that makes up most of the plaintiff's complaint is simply an 18-month process, which falls short, well short, of the 2-year benchmark that this Court has spoken of on multiple occasions. So that event that you're excluding now was March 22, 2014, right? Yes. It was the shop drawings issue, right? Yes. Why wasn't that connected to your client? My client communicated with the entity that did the shop drawings on Long Island, but it was that entity that ordered the actual steel from the entity in Georgia. So my client had no communication at that stage of the game with the supplier out of State. But it was for this project. It was for this project, Judge. Similarly, Judge, the – and, you know, the temporal scope is not, of course, the only aspect of this job, of this analysis. I mean, you know, we look at the scope of the job. We look at the, you know, the number of victims, the parties affected. And based upon that, you know, the lower court found that the plaintiff had failed to even plead the continuity component, either closed-ended or open-ended. As the Court stated below, it does not wish to federalize a garden-variety State common law claim, which – and I believe its dismissal of the complaint was appropriate, and I would ask this Court to affirm that finding. Okay. Thank you very much. Thank you. We'll now hear Mr. Haskell for a minute of rebuttal. First of all, this is a motion to dismiss. It's not a motion for summary judgment. The Court found that the first act was related. It actually set the stage. We have alleged in our complaint that the – Mr. Festa was behind that, and that was his intent, and that he orchestrated this. So that was part of this whole scheme. Six victims, two schemes, 29 months minimum and interrupted. Under Gelb, the interruption should not be taken as if it ended this. This is the type of case which is not garden-variety by any stretch of the imagination. If we affirm here, we basically disregarded the Supreme Court's reasoning in Sedema, in H.J., and a number of other cases. Congress intended RICO to be applied to situations like this. I hope that a contractor that spends over two years misappropriating funds from a church, stealing money, basically taking money from subcontractors, committing perjury and larceny, that is not the typical way that we do business in the State of New York or anywhere else in this country. This is exactly what RICO was designed to do, and even though it was a business that Mr. Pandolfo claims was legitimate for many years, 2012 was when it was formed, and almost immediately you have this situation. Your Honor, this Court should reverse. Thank you. Roberts. Thank you very much, Mr. Hatchell. So we'll reserve decision. That concludes the arguments. We have two cases on submission, which we'll reserve on those as well. So thanks very much. Have a good day. Court is adjourned.